UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
AUG 3 1 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-433

CAROLITA KEMP,                        PLAINTIFF,

VS.          **MEMORANDUM OPINION**

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,       DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). The case is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step

1

    4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404,1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into

account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

*Additional information concerning the specific steps in the test is in order.*

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf.

4

Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

5

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Carolita Kemp, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of complaints of back and neck pain and iron deficiency anemia. (Tr. 19). Nevertheless, the ALJ concluded that Mrs. Kemp retained the residual functional capacity to perform "light" level exertion with no more than occasional bending and stooping and, thus, could return to her past relevant work as a customer service representative for a cable TV company, as she

performed the job and also as it is normally performed in the national economy. (Tr. 20-2). Therefore, she was not entitled to benefits. The Appeals Council declined to review, and this action followed.

Mrs. Kemp alleged disability due to back and neck pain resulting from a motor vehicle accident in January, 2003. (Tr. 65, 210, 212). She alleged that it was difficult to stand or walk without pain and numbness developing in her back and legs. (Tr. 214-15). She also complained of headaches resulting from some sort of growth on her head, and panic attacks two or three times a day. (Tr. 211, 216).

While the plaintiff submitted notes of treatment for various conditions, including a sebaceous cyst on her head (e.g. Tr. 119), no restrictions were related to any problems other than alleged back pain.

Immediately after the motor vehicle accident, Mrs. Kemp was seen at an emergency room, and cervical spine x-rays showed no fracture or misalignment. (Tr. 141-9). She underwent physical therapy until March 14, 2003, and indicated that her pain had improved substantially to no more than 3 on a scale of 1 to 10. (Tr. 154). Dr. Robert Hoskins, a treating family physician, obtained cervical spine x-rays showing "mild" subluxation of C5 over C6, and lumbosacral spine x-rays showing "mild" straightening possibly indicative of spasm. (Tr. 111). His physical examination showed that the plaintiff was in no distress, but many of his office notes do not discuss an actual orthopedic evaluation. (E.g. Tr. 103-4, 107-8). In March and April, 2003, he did note tenderness over the lumbar spine and left sacroiliac joint, as well as some tenderness across the shoulders. (Tr. 96, 98, 101). Dr. Hoskins obtained MRIs of the cervical and lumbosacral spine, which showed no herniated discs or

7

stenosis, although there was a slight loss of signal at the L5-S1 disc, most probably due to dehydration. (Tr. 94, 98). He prescribed physical therapy and injections, commenting that he thought Mrs. Kemp would need more injections to carry on regular activities without pain. (Tr. 98). However, no further visits were made Dr. Hoskins and the physician never listed any specific functional restrictions.

Dr. Albert Smolyar conducted a consultative physical examination on November 12, 2003, and reviewed the plaintiff's x-rays and MRIs. (Tr. 112-13). He found her to be in no distress or pain, with a normal gait and station, and an ability to walk on her heels and toes "with a lot of encouragement." (Tr. 113). Her effort was described as poor, but after encouragement she was able to forward flex all the way to 90 degrees. (Id.). Straight leg raising was positive on the left for back pain, but there were no radicular symptoms, and an axial load test was positive, suggesting symptom magnification. (Tr. 114).[1] There was no spasm or neurological deficit. (Id.). Dr. Smolyar concluded that the plaintiff should be able to perform physical activity at a mild to moderate level, such as walking one hour at a time, and total of six hours in an eight-hour day "with interruptions." (Tr. 115). He felt that she could lift 20 pounds occasionally and 10 found frequently, sit or stand 30 to 60 minutes at a time or six hours in an eight-hour workday with interruptions, and that she should avoid repetitive bending and stooping given her low back pain. (Id.).

There are no restrictions by any source greater than Dr. Smolyar's, although a state agency reviewing source concluded, after reading his report, that the plaintiff

---

[1] A family nurse practitioner at Frontier Nursing Service also found this test to be positive in March, 2003. (Tr. 118).

8

did not even have a "severe" physical impairment. (Tr. 121). The plaintiff does not challenge Dr. Smolyar's findings on appeal, but disputes the ALJ's conclusion that she could return to her past work as a customer service representative.

The plaintiff correctly notes that the ALJ did not incorporate the restrictions on sitting and standing into his functional capacity conclusion, which assumed the capacity for "light work activity with no more than occasional bending and stooping." (Tr. 20). In the present case, no vocational expert testified, and the issue is whether the plaintiff carried her burden of showing that she could not return to her past relevant work. Mrs. Kemp's description of her job as a customer service representative for a cable company included information that she took payments, answered telephones, would lift terminals and give them to the customers, restock the terminals as customers brought them back in, that she would do dispatching, and she would have to "store the payments that we had on the tape during the week." (Tr. 208-9). She quit this job when the company changed hands and started laying people off. (Tr. 209). Elsewhere in her application, Mrs. Kemp described this job as requiring eight hours of walking, eight hours of sitting and (apparently) six hours of stooping, six hours of crouching, six hours of reaching, and eight hours of writing, typing, and handling small objects. (Tr. 73). Obviously, some of these statements are inconsistent and contradictory.

However, assuming for the sake of argument that the plaintiff's job required more than VE "occasional" bending and stooping found by the ALJ, the ALJ also found that Mrs. Kemp could return to this job as it is performed in the national economy. The Dictionary of Occupational Titles (DOT) Section 239.362-014,

9

captioned "Customer Service Representative," which includes jobs at cable television systems, is listed as "sedentary" level exertion that does not require stooping, reaching, or any other non-exertional ability other than occasional reaching, handling, and near acuity, frequent fingering and accommodation, and constant talking and hearing. Even viewing Dr. Smolyar's limitations in a light most favorable to the plaintiff, there is nothing in the DOT description of the job which would preclude the plaintiff from performing it. Therefore, substantial evidence supports the ALJ's determination that the plaintiff failed to carry her burden of showing that she could not return to her past relevant work.

The decision will be affirmed.

This the ___31___ day of August, 2006.

G. WIX UNTHANK,
Senior Judge